T. H. THATCHER ET AL., Plaintiffs, RICHMOND C. COBURN, Respondent, v. CITY OF ST. LOUIS, Trustee Under the Will of BRYAN MULLANPHY, Appellant.

T. H. THATCHER ET AL., Plaintiffs, JAMES H. HIGGS, Administrator of the Estate of VANCE J. HIGGS, and ROBERT J. KEEFE, Respondents, v. CITY OF ST. LOUIS, Trustee Under the Will of BRYAN MULLANPHY, Appellant.—122 S. W. (2d) 915.

Division One, December 20, 1938.

*E. H. Wayman* and *Oliver Senti* for appellant.

*Thompson, Mitchell, Thompson & Young* and *Richmond C. Coburn* for respondent Coburn.

*Igoe, Carroll, Keefe & McAfee* and *J. W. McAfee* for respondent Higgs.

PER CURIAM:—The City of St. Louis, as trustee of the Bryan Mullanphy trust, appeals from an order and judgment allowing attorneys' fees, to be paid out of the trust fund, to respondents as attorneys for the Attorney General of Missouri. Appellant's contention is that such allowances are in violation of Sections 1 and 24 of Article V of the Constitution of Missouri.

The allowances were made in the case of Thatcher v. Lewis, 335 Mo. 1130, 76 S. W. (2d) 677. The case was in equity, by descendants of sisters of Bryan Mullanphy, to terminate the trust created by his will on the ground that "the purpose of said trust has long since wholly failed." Appellant filed a plea in abatement on the ground that the Attorney General was a necessary party. This was sustained, and the Attorney General was brought into the case. Thereafter, "by answer and cross bill, the City of St. Louis and the Attorney General of Missouri asked for an interpretation of the will and for instructions to the trustee." The court's decree found that the Mullanphy heirs "had no right, title, or interest in the trust fund, and dismissed their bill;" and also "stated its findings and directions" for the future use of the trust funds. Except as to one paragraph, immaterial here, this decree was affirmed.

Respondents correctly state that the Attorney General was a necessary party. [Lackland v. Walker, 151 Mo. 210, 52 S. W. 414; Dickey v. Volker, 321 Mo. 235, 11 S. W. (2d) 278, 62 A. L. R. 858.] But respondents state that the Attorney General "appearing as a party litigant in such a case as this is not in anywise connected with his usual duties and that although it is necessary that he appear because he holds the office, his activities as such are in nowise connected with his work as lawyer for the State;" and that "the duty of the Attorney General in connection with this case is not as a lawyer but is specifically that of a contending party." In the Dickey case, en banc, we said: "In England charitable trusts came to be favored. . . . (Quoting from the Lackland case, "the public is the beneficiary of the trust, and the Attorney General, as its representative, was the only real party in interest.") The King was the guardian of such trusts, and enforced them by his Attorney General with the aid of the chancellor. In this country the people as guardian enforce them in the equity courts by their Attorney General." [See also 5 Am. Jur. 246, sec. 17; 10 Am. Jur. 668, sec. 1155; 7 C. J. S. 1222, sec. 5; 11 C. J. 368, sec. 90; 62 A. L. R. 882, note; Chambers v. St. Louis, 29 Mo. 543 (the first Mullanphy trust case); American Law Institute Restatement of Trusts, sec. 381; 2 Perry

on Trusts, 1252, secs. 732 and 732a.] Thus it appears that, while the Attorney General may be "a party litigant" as representative of the public (obviously too numerous to be sued) which is the real beneficiary, it is nevertheless his duty to be "the lawyer" for the beneficiary; and that such duty was well established under the Common Law.

Section 24 of Article V of the Constitution, which applies to the Attorney General and other elective executive officers, is as follows:

"The officers named in this article shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms; and they shall not, after the expiration of the terms of those in office at the adoption of this Constitution, receive to their own use any fees, costs, perquisites of office, or other compensation. All fees that may hereafter be payable by law for any service performed by any officer provided for in this article shall be paid in advance into the state treasury."

We considered this section, and also Section 1, en banc, in State ex rel. Barrett v. Boeckeler Lumber Co., 302 Mo. 187, 257 S. W. 453, and there held unconstitutional a statute, which authorized the allowance of a fee to the Attorney General, for his services in anti-trust suits, "in addition to the salary now allowed by law." It was contended there, as respondents here argue, that Section 24 does "not apply to duties performed by a public officer which are not incident to his office" and that the services herein performed "were not within the official duty of his office." We ruled against the application of this contention to the facts in the Boeckeler case, saying:

"Relator describes the duties imposed on the Attorney General by the statute, in relation to the prosecution of trusts and combines in restraint of trade, as 'unusual and extraordinary.' If by that he means that the duty is not incident to the office of Attorney General, and such is the fact, his second position is well grounded; for, while the Constitution says that he shall receive a salary for his services, and that he shall perform such services 'as may be prescribed by law' (Sec. 1, Art. 5), yet it could not have been intended that duties should be imposed upon him which *in no way pertain to the office of the Attorney General*. It is for the performance of those duties, and those only, that the salary is given him. . . . Such is the substantial basis of decision in State v. Walker, 97 Mo. 162, 10 S. W. 473. [Also Little River Drainage District v. Lassater, 325 Mo. 493, 29 S. W. (2d) 716, cited by respondents.] . . . It is generally held in this country that the office of Attorney General is clothed, in addition to the duties expressly defined by statute, with all the powers pertaining thereto under the common law. . . . .

The duties of the Attorney General at common law were so varied and numerous that they have perhaps never been specifically enumerated. . . . They (duties under anti-trust statute) are at least of the same general character (as his common law duties), and therefore fall within the scope of the services which 'may be prescribed by law,' and for the performance of which the Attorney General shall be allowed a salary and no other compensation of any kind or character.''

In view of the historical common law basis of the duties of the Attorney General with reference to representing the interests of the public in charitable trusts, it is plain that we cannot hold that these are duties ''which in no way pertain to the office of the Attorney General.'' On the contrary, we must hold that representation of the public to enforce charitable trusts, in their interests, is a duty directly pertaining to the Attorney General's office, and is a duty within the constitutional designation of ''such duties as may be prescribed by law.'' In this situation the Constitution clearly prohibits an allowance of fees to the Attorney General for such services to his own use, and further requires that fees, if any, are payable by law for such services, ''shall be paid . . . into the state treasury.'' Respondents cite St. Louis v. McAllister, Attorney General, 302 Mo. 152, 257 S. W. 425, en banc, where we said, quoting 2 Perry on Trusts (6 Ed.), section 747: ''Where a suit arises between the heir and the trustee whether there is a proper bequest to a charitable use, and whether the charity can be established; or where a suit arises between the trustees and the *cestuis que trust*, if there are any that can come into court, or the Attorney General and the trustees as to the establishing and administering of the charity, costs will be allowed to all parties, together with reasonable counsel fees or costs as between solicitor and client, out of the charity fund or estate.'' There was no controversy between the Attorney General and the trustee in this case since both took the same position as to the validity of the trust and the application of the *cy pres* doctrine. Neither was there any ruling in the McAllister case on the question of an allowance to the Attorney General or to counsel for him. It is apparent that no such allowance was requested, because in our official report of the main opinion therein (City of St. Louis v. McAllister, Attorney General, 281 Mo. 26, 1. c. 27, 218 S. W. 312) it is shown that the Attorney General appeared in person and also by an ''Assistant Attorney General.'' Likewise, we observe in Dickey v. Volker, 321 Mo. 235, 11 S. W. (2d) 278, 1. c. 280, the notation ''Attorney General *pro se*.'' We cannot sustain the contention of respondents that the Attorney General in charitable trust cases ''does not appear in the discharge of his official duties.''

 Respondents state that the Attorney General has authority to employ special counsel to represent him. [Citing Hauser v. Doyle's Estate (Kan.), 59 Pac. (2d) 674; McQuesten v. Attorney General (Mass.), 72 N. E. 965; Hines Yellow Pine Trustees v. Knox (Miss.), 108 So. 907; In re Creighton's Estate (Neb.), 136 N. W. 1001; see also People v. Talmage, 6 Cal. 256; Ritchie v. State (Wash.), 85 Pac. 417; Commonwealth v. Roberta Coal Co. (Ky.), 216 S. W. 584; Gordon v. Morrow (Ky.), 218 S. W. 258; Taylor v. Allen (La.), 91 So. 635.] Although he cannot obligate the State beyond appropriations made for such purposes, our Attorney General does have authority to employ special assistants. Section 11277, Revised Statutes 1929 (Amended Laws 1933, p. 177; Laws 1937, p. 185) now authorizes the Attorney General "to appoint ten Assistant Attorneys General and such other Assistants as may be necessary, who shall hold their offices at the pleasure of the Attorney General." It also provides that "it shall be their duty to assist the Attorney General in his official duties, with power and authority under his direction to represent him in all trials and proceedings in which he may be required to appear or participate;" and it further provides the maximum salaries to be paid. Before this section was amended to authorize the appointment of such "other Assistants as may be necessary," the Legislature recognized the need of more than the regular Assistant Attorneys General, and made appropriations for Special Assistants beyond the number specifically authorized by the statute. [See Laws 1931, p. 19; Laws 1929, p. 48.] We have, however, very recently held, en banc, that it does not follow, because a state officer has the right to employ attorneys, that they "were to be paid for their services out of the fund" in litigation. [Aetna Ins. Co. v. O'Malley, Nos. 35568 and 35569, 343 Mo. 1232, 124 S. W. (2d) 1164. There are instances where the Legislature has specifically authorized the payment of attorneys employed by a State officer out of a trust estate which he is directed to administer. [Commissioner of Finance in Liquidation of Banks, Secs. 5323-5324, R. S. 1929; Superintendent of Insurance in Liquidation of Insurance Companies, Secs. 5951 and 5954, R. S. 1929.] While the general law of trusts, receiverships, or other branches of equity may authorize other instances, our constitutional and statutory provisions plainly indicate that the compensation of the Attorney General, or attorneys representing him in the performance of duties pertaining to his office, was intended to be as the Legislature saw fit to provide.

Respondents also state that, even though "the Attorney General cannot lawfully receive compensation for the performance of his duties in respect to charitable trusts," it does not follow "that persons employed by him to perform those duties cannot lawfully receive compensation therefor." They cite State ex rel. Colorado River

Commission v. Frohmiller (Ariz.), 52 Pac. (2d) 483, 53 Pac. (2d) 854. That case ruled the right of compensation of an attorney (originally a Special Assistant Attorney General) employed by the River Commission. It had nothing to do with charitable trusts. The only case that we have been able to find that passes upon the specific contentions, made in this case, is Wemme v. First Church of Christ, Scientists (Ore.), 223 Pac. 250. It directly rules respondents' above stated contention and specifically passes upon the right of special counsel, employed by an Attorney General to represent him in a charitable trust case, to have an allowance of fees out of the trust fund. It rules against respondents' contentions. It states statutory provisions of Oregon similar to our constitutional provisions concerning the duties and compensation of the Attorney General.

The court in that case, after an exhaustive review of both English and American cases, said:

"The statutes clearly prohibit compensation to the Attorney General out of the fund, and no authority is found in the rules of equity practice which warrants such an allowance to the Attorney General. While allowances for attorneys' fees out of the fund in the control of a court of equity are sometimes made directly to the attorneys themselves, the right of such attorneys thereto in every such case is dependent upon the right of their client to such fees. [Schmidt v. Ore. Mining Co., 28 Ore. 9, 30, 40 Pac. 406, 1014, 52 Am. St. Rep. 759.] If the client is not entitled to costs, including attorney's fees, out of the fund, no allowance can be made directly to the attorney.

. . .

"The right of the Attorney General to costs, as between party and party, out of a charity fund, is supported by authority (Attorney General v. Ashburnham, 1 Simon & Stuart's Reports, 394) ; but diligent search has failed to reveal any adjudicated case, either in England or the United States, holding the Attorney General, or special counsel authorized to appear for him, entitled to attorney's or solicitor's fees out of funds belonging to a public charity which was the subject of the litigation.

"It is incorrectly stated in Beames on Costs, p. 15, that Moggridge v. Thackwell, 7 Ves. 36, is a case concerning a charitable trust, in which costs as between solicitor and client were allowed out of the fund to all the parties, including the Attorney General.

"The case, as reported in 7 Ves. 36, came before Lord Chancellor Eldon on rehearing, and he adhered to the decision and decree, including the order for costs, given by Lord Chancellor Thurlow, his predecessor. [1 Ves. 464.]

"The reports of the case show that it was a suit commenced by the executors against the legatees in the will, to obtain a decree construing a provision of the will, whereby the testator had attempted

to found a charity. The Attorney General was not a party to the record, and no reference is made to him in the order for costs, which was in these words:

" 'Let all parties have costs out of the estate, and as between attorney and client, since it is a cause between relations.' [1 Ves. 464, 475.]

(We note that Moggridge v. Thackwell, supra, is cited by respondents here and is also set out as authority for the statement in Tudor on Charitable Trusts (5 Ed.), 377, cited by respondents.)

"In view of the large number of cases that have arisen concerning funds belonging to public charities, the absence of an allowance, in any of them, of counsel fees out of the fund, to the Attorney General or his representatives, is a strong argument against the power of authority of a court of equity to impose a charge of that character upon such fund."

We consider the ruling of the Oregon court to be sound and applicable authority here. Since we find nothing to the contrary, we will follow it and rule that neither the Attorney General nor special attorneys employed to represent him are entitled to have fees allowed and paid out of the funds of a charitable trust.

The judgment is reversed.