In the Matter of the ESTATE of Frank CHASEL, Deceased.

No. 19265.

Supreme Court of Utah.

Sept. 15, 1986.

George E. Mangan, Roosevelt, for appellant.

Raymond A. Hintze, Salt Lake City, for respondent.

STEWART, Justice:

William Chasel, son of Frank Chasel, appeals an order that denied his motion to set aside a compromise agreement and to reopen a formally closed estate to allow a recently discovered will to be admitted to probate. The order closing the estate directed the distribution of the estate to William and to two half-sisters and a half-brother of the decedent in equal shares. William argues on appeal that the trial court erred in refusing to admit to probate a subsequently discovered will that left Frank Chasel's estate entirely to William Chasel. We affirm.

Frank Chasel died in June, 1980. He was unmarried at that time and was survived by one child, the appellant William Chasel, who lived with his mother and step-

father. After William had performed a diligent search for a will and was unable to find one, he applied for informal appointment as the personal representative of the estate of Frank Chasel, and on July 9, 1980, a registrar approved his appointment.

Shortly thereafter the respondents, the decedent's half-brother and two half-sisters, commenced a separate proceeding to probate a will purportedly executed by the decedent which disinherited William. Because of uncertainty as to whether that will was valid, William and the respondents entered into a compromise agreement. Pursuant to that agreement, the respondents withdrew the will from the probate proceeding, and they and William agreed that each would take approximately an undivided one-quarter interest in the decedent's real property and one-quarter of the cash from the estate.

On July 31, 1981, the trial court entered an order that incorporated the compromise and closed the estate. That order stated:

Upon consideration of the Petition for Approval of Final Settlement and Distribution filed by William Frank Chasel on July [31], 1981, the Court determines and finds that the allegations and statements in the Petition are true, all required notices have been given or waived, and the estate has been administered according to the laws of this state and the orders of this Court and should be closed.

. . . .

[T]he Personal Representative is hereby authorized and directed to deliver and distribute title and possession of the assets of the estate. . . .

. . . .

The Decedent died intestate. The heir of the Decedent and his respective interests and others receiving interests, in the Decedent's estate are set forth in the attached [documents setting forth the compromise agreement].

Approximately ten months later, William found three additional wills in the law offices of Roe & Fowler. The wills had been executed after the will which the respondents had offered for probate. On July 28, 1982, less than a full year after the above closing order was issued, William moved to set aside the compromise agreement and the court order based on it and to admit the newly discovered wills to probate. The tri-

al court denied the motion on the grounds that (1) the estate had been formally closed; (2) the time for admitting a newly discovered will to probate had passed; and (3) William had not alleged facts sufficient to justify setting aside the compromise agreement and closing order on the basis of mutual mistake of fact or duress.

William asserts on appeal that: (1) the July 31, 1981 closing order issued from a proceeding that was an informal proceeding, not a formal testacy proceeding, and that he therefore had one year after the closing of the estate to move to reopen the proceeding and probate the newly discovered wills, and (2) the compromise agreement should be set aside because of mutual mistake of fact or duress. We affirm.

## I.

■ After an estate has been probated and a closing order entered in a formal testacy proceeding, the court may not thereafter vacate an order approving final distribution of the estate to admit a newly discovered will to probate. § 75–3–412(1)(a) & (3)(a).[1] The appellant asserts, however, that he had at least one year in which to move to set aside the intestacy order and the order of distribution and to move to admit a newly discovered will. *See* § 75–3–107(1)(c) & (2).

William asserts that the decree of final distribution, which was based on the compromise agreement, was entered in a judicial proceeding pursuant to § 75–3–1101[2] and that that proceeding was only a proceeding to approve the compromise agreement and was not a formal testacy proceeding governed by §§ 75–3–401 to –414. He argues that the court's approval was granted in an informal *ex parte* judicial proceeding which did not rise to the level of a formal proceeding. *See* §§ 75–3–301 to –311. From that he argues that his July 28, 1982 petition to vacate the final order of final distribution of July 31, 1981, was timely because it was a proceeding to reopen an informal proceeding. We disagree for two reasons.

First, the estate closing order was entered in a "formal testacy proceeding." A formal proceeding is defined by the Probate Code to be a proceeding "conducted before a judge with notice to interested persons." § 75–1–201(15). "[A] formal testacy proceeding is litigation to deter-

---

**1.** U.C.A., 1953, § 75–3–412 states in pertinent part:

(1) Subject to appeal and subject to vacation as provided in this section and in section 75–3–413, a formal testacy order under this part, including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs, except that:

(a) The court shall entertain a petition for modification or vacation of its order and probate of another will of the decedent if it is shown that the proponents of the later-offered will were unaware of its existence at the time of the earlier proceeding or were unaware of the earlier proceeding and were given no notice of it, except by publication.
. . . .
(3) A petition for vacation under either subsections (1)(a) or (b) must be filed prior to the *earlier* of the following time limits:

(a) If a personal representative has been appointed for the estate, the time of entry of any order *approving final distribution* of the es-

tate, or, if the estate is closed *by statement,* six months after the filing of the closing statement.

(b) Whether or not a personal representative has been appointed for the estate of the decedent, the time prescribed by section 75–3–107 when it is no longer possible to initiate an original proceeding to probate a will of the decedent.

(c) Twelve months after the entry of the order sought to be vacated.
(Emphasis added).

**2.** Section 75–3–1101 states:

A compromise of any controversy as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity, or effect of any probated will, the rights or interests in the estate of the decedent, any successor, or the administration of the estate, if approved in a formal proceeding in the court for that purpose, is binding on all the parties thereto, including those unborn, unascertained, or who could not be located. An approved compromise is binding even though it may affect a trust or an inalienable interest. A compromise does not impair the rights of creditors or of taxing authorities who are not parties to it.

mine whether a decedent left a valid will," § 75–3–401(1), and includes a proceeding to secure a declaratory judgment of intestacy and a determination of heirs. *Id.*, editorial board comment (v). In a formal testacy proceeding to determine intestacy, a party must "request a judicial finding and order that the decedent left no will and [a ruling] determining the heirs." § 75–3–402(3).

■ The petition filed July 30, 1981, requested a judicial finding that Frank Chasel died intestate and that William was his sole heir. The July 31, 1981 estate closing order declared that "all required notices had been given or waived," found that the decedent died intestate, and ruled that the estate should be closed. The probate court's order met the statutory requirements for a formal testacy proceeding. *See* § 75–3–402(3); *In re Estate of Polda*, 349 N.W.2d 11, 16 (N.D.1984).

■ Second, compromise agreements authorized by Part 11 of the Probate Code must be approved in formal proceedings. Section 75–3–1101 states that a compromise agreement "if approved in a formal proceeding in the court for that purpose, is binding on all the parties thereto." Compromise agreements in estate disputes, even more than in settlement of litigation generally, are encouraged to promote harmony and to prevent the waste of assets. *Bohannon v. Trotman*, 214 N.C. 706, 200 S.E. 852 (1939). Court approval of compromise agreements is designed to ensure that the rights of incompetent, minor, and unborn heirs are adequately protected so that they can be bound by the agreement. *See* § 75–3–1101.[3] Except for the requirement of court approval and other statutory requirements in Part 11, a compromise agreement under the Probate Code is like other compromise agreements. Once formally entered, it cannot be set aside merely because one party discovers new evidence which could make the outcome more favorable to that party. *In re Estates of Thompson*, 226 Kan. 437, 441–42, 601 P.2d 1105, 1110 (1979); *Bohlman v. Big River Oil Co.*, 124 N.W.2d 835, 839 (N.D.1963). Rather, the agreement can be set aside only for the reasons generally available to set aside a compromise agreement, *i.e.*, illegality, fraud, duress, undue influence, or mistake. 15A Am.Jur.2d *Compromise and Settlement* §§ 27–34 (1976). Thus, since the court had approved the compromise agreement, William was bound by the agreement and not entitled to have the order set aside for the purpose of submitting a subsequently found will to probate. *See In re Estate of Killinger*, 448 So.2d 1187, 1189 (Fla.Ct.App.1984).

Because William had been appointed personal representative of the estate and the estate closing order directed William to make a final distribution of the estate, wills discovered after July 31, 1981, could not be admitted to probate under the terms of § 75–3–412(1) & (3). The court's approval of the compromise agreement had the same effect.

## II.

William also moved to set aside the compromise agreement and the closing order on the grounds that (1) the parties were mutually mistaken concerning the existence of the later discovered wills, and (2) the circumstances under which the compromise agreement was entered into constituted duress.[4] In the absence of a conflict with the Probate Code, "the rules of civil procedure, including the rules concerning vacation of orders ..., govern formal proceedings under this code." § 75–1–304. *In re Estate of Pepper*, 711 P.2d 261, 263 (Utah 1985), held that estate closing orders are subject to timely attack under Utah R.Civ.P. 60(b). *Accord In re Bourne*, 99 N.M. 694, 697, 662 P.2d 1361, 1364 (1983).

---

**3.** Because the law favors effectuation of a testator's will, a court should approve a compromise agreement only if it finds that a good faith dispute exists. § 75–3–1102, editorial board comment.

**4.** *In re Estates of Thompson*, 226 Kan. 437, 441, 601 P.2d 1105, 1109 (1979), held that finding a subsequently discovered will did not constitute a mistake of fact that would justify setting aside a compromise agreement.

The same rule applies to court orders approving compromise agreements under § 75–3–1101. However, the motion to set aside the compromise agreement and closing order on those grounds was untimely.

■ William's claim of mutual mistake falls under Rule 60(b)(1), and his claim of duress falls under Rule 60(b)(3). A motion brought under both of those provisions must be filed "not more than three months after the judgment, order, or proceeding was entered or taken." Rule 60(b). Further, "[i]f a party's grounds are properly encompassed within those ... subsections, he cannot avoid the three-month limitation by employing the 'catch-all' subsection (7)." *In re Estate of Pepper*, 711 P.2d 261, 263 (Utah 1985); *Larsen v. Collins*, 684 P.2d 52, 54 (Utah 1984); *Russell v. Martell*, 681 P.2d 1193, 1195 (Utah 1984).[5] William's motion to set aside the compromise agreement was not filed until almost a year after the court's original order and was not timely under Rule 60(b).

Affirmed. Costs to respondent.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**5.** Actions for fraud perpetrated during proceedings under the Probate Code are governed by a special statute of limitations. Section 75–1–106 allows injured parties to bring an action to recover for fraud perpetrated in a proceeding under the Code at any time within three years after discovery of the fraud, although no action may be brought against an innocent beneficiary of the fraud more than five years after commission of the fraud. *Id.* That provision is consistent with previous decisions of this Court. In *Weyant v. Utah Savings & Trust Co.*, 54 Utah 181, 204–05, 182 P. 189, 198–99 (1919), this Court held that if the administratrix commits fraud, then those injured by the fraud are entitled under the Open Courts Clause, Utah Const. Art. I, § 11, to bring an equity action for relief even after the time for appeal has expired, at least when the injured parties are out of state and do not become aware of the fraud until after the time for appeal has run. However, the Code's fraud exception is not applicable on the facts of this case. *See also In re Estate of Pepper*, 711 P.2d 261 (Utah 1985).