SARPY COUNTY, NEBRASKA, APPELLEE, V. CITY OF SPRINGFIELD, NEBRASKA, ET AL., APPELLANTS.

492 N.W.2d 566

Filed December 4, 1992. No. S-90-052.

William E. Seidler, Jr., and Philip J. Mahoney, of Ryan & Seidler, for appellants.

William F. Hargens and Robert J. Bothe, of McGrath, North, Mullin & Kratz, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The City of Springfield has appealed a summary judgment granted in favor of the plaintiff, Sarpy County, in this declaratory judgment action. The county had sought to have Springfield's landfill licensing ordinances Nos. 306 and 311 declared invalid and to enjoin their enforcement.

Sarpy County proposed to build a solid waste disposal facility 1½ miles northwest of the corporate limits of Springfield, Nebraska, in Sarpy County. Neb. Rev. Stat. § 23-379 (Reissue 1991) provides that "[e]ach county may purchase, construct, maintain, and improve garbage disposal plants, systems or solid waste disposal areas . . . and may lease or take land in fee . . . for the construction and operation of such . . . solid waste disposal areas. . . ."

On December 6, 1988, the Sarpy County Board of County Commissioners voted to seek an option on appropriate property for what is now called the Fairview Road facility, and later entered into a written purchase agreement for this property. The county then notified the Nebraska Department of Environmental Control (NDEC) of its intent to develop the site into a solid waste disposal area. By letter dated May 17, 1988, the NDEC preliminarily approved the site as appropriate for a solid waste disposal area. The Sarpy County board voted on July 11, 1989, to issue a special use permit for a solid waste disposal area at the Fairview Road facility.

On March 28, 1989, the City of Springfield passed ordinance No. 306, which requires a city license before any person, governmental subdivision, or agency could operate, maintain, or construct a solid waste disposal area within 5 miles of the corporate limits of Springfield if the solid waste disposal area would be located over a ground water source that supplied

drinking water to the residents of Springfield. The ordinance requires that an application contain the applicant's name and residence and be accompanied by a $5,000 filing fee and "such other information as is deemed necessary by the City Council." The ordinance also provides that the city council shall hold a hearing within 45 days after the filing of the application, but imposes no time limits for the mayor and council to arrive at a decision as to whether to grant the license.

On March 30, 1989, the city notified Sarpy County by letter of its landfill licensing ordinance. The Sarpy County board replied on April 11, 1989, that it would not apply for a Springfield landfill license, on the ground that the Nebraska Environmental Protection Act, Neb. Rev. Stat. § 81-1501 et seq. (Reissue 1987) (NEPA), had preempted the field of water pollution control from local regulation.

Sarpy County then filed its declaratory judgment action against Springfield, its mayor, and its city council, alleging that the city had no statutory authority for the enactment of its landfill licensing ordinance and that the ordinance was "invalid, unenforceable and/or inapplicable" to the proposed site. The county further requested an injunction to restrain the city from enforcing the ordinance.

In November 1989, and prior to the hearing on the motion for partial summary judgment, Springfield amended ordinance No. 306 by adopting ordinance No. 311. Ordinance No. 311 contains essentially the same requirements as ordinance No. 306 except that ordinance No. 311 requires the hiring by the city council of an independent engineering firm to review the application and adds some other requirements not essential to a determination of this litigation.

At the hearing on the motion for summary judgment, certain portions of various depositions were offered, together with detailed engineering studies and affidavits, much of which had been in support of the county's application before the NDEC for the issuance of a landfill permit. The district court ordered the motion sustained, ordered that ordinances Nos. 306 and 311 are invalid as applied to the county's solid waste facility, and further ordered that the City of Springfield had no authority to enact either ordinance as applied to the proposed Fairview

Road facility "or any other ordinance purporting to regulate or prohibit plaintiff's ownership, construction and operation of its proposed Fairview Road facility."

In support of its claim of error in the court's granting of summary judgment, Springfield alleges that the trial court erred in holding that the city had no power to regulate the operation of a solid waste disposal area within 5 miles of its corporate limits under the circumstances existing and in holding that the NDEC has exclusive general supervision for the licensing of solid waste disposal areas. We affirm.

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the trial court. *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990); *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988).

When reviewing a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from that evidence. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992); *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991).

At the outset, Sarpy County claims that the issuance of a partial summary judgment was not a final, appealable order. A final order has been statutorily defined thus:

> An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter.

See Neb. Rev. Stat. § 25-1902 (Reissue 1989).

This court has stated that an order is final and appealable when the substantial rights of the parties to the action are determined, even though the cause is retained for the determination of matters incidental thereto. *In re 1983-84 County Tax Levy*, 220 Neb. 897, 374 N.W.2d 235 (1985);

*Dorshorst v. Dorshorst*, 174 Neb. 886, 120 N.W.2d 32 (1963).

To be final, an order must dispose of the whole merits of the case and must leave nothing for the further consideration of the court. Thus, when no further action of the court is required to dispose of a pending cause, the order is final. However, if the cause is retained for further action, the order is not final. *Lewis v. Craig*, 236 Neb. 602, 463 N.W.2d 318 (1990). See, also, *Voyles v. DeBrown Leasing, Inc.*, 222 Neb. 250, 383 N.W.2d 36 (1986).

Sarpy County alleges that the trial court did not try the county's claims that the ordinances were arbitrary, capricious, and discriminatory; that the ordinances were vague and deprived Sarpy County of due process; that Springfield was guilty of laches and should be estopped from attempting to enforce the ordinances; and that Sarpy County is entitled to permanent injunctive relief.

These contentions are without merit for the most obvious of reasons. Since the trial court found for the county on the threshold issue that the city lacked authority to regulate or prohibit the construction, operation, and maintenance of a new solid waste disposal area beyond its zoning jurisdiction, there was no need to reach any of the other claimed defects of the ordinances. If the city did not have the authority to act and the activity was declared invalid, no further action was required to dispose of the cause pending, and hence, the order was final.

Solid waste disposal areas in Nebraska are regulated by NEPA, § 81-1501 et seq. The NDEC, created by the act, shall have the power and duty "[t]o exercise exclusive general supervision of the administration and enforcement of the Environmental Protection Act and all rules and regulations and orders promulgated thereunder" and

> [t]o issue, continue in effect, revoke, modify, or deny permits, under such conditions as the director may prescribe, . . . to prevent, control, or abate pollution, or for the discharge of wastes into the air, land, or waters of the state, and for the installation, modification, or operation of disposal systems or any parts thereof.

§ 81-1504(1) and (11).

Section 81-1518(1), which was repealed in 1992, provided in

part:

> Before the director shall approve a new solid waste disposal area, it shall be approved by the county board of the county, if the area is outside the zoning jurisdiction of a city or village, or by the city council or board of trustees if within the zoning jurisdiction of a city or village.

The zoning authority of a city of the second class extends to an area within 1 mile of its corporate limits. Neb. Rev. Stat. § 17-1001 (Reissue 1991). The Fairview Road facility is located $1\frac{1}{2}$ miles northwest of the city limits, and therefore § 81-1518(1) on its face grants to the county rather than to the city the authority to approve a waste disposal area. There was no authority under § 81-1518(1) for the City of Springfield to control the approval of a solid waste disposal site.

However, the City of Springfield argues that NEPA does not preempt the city's power to regulate a solid waste area, citing us to §§ 81-1529 and 81-1516. Section 81-1529 provides as follows: "Nothing in the Environmental Protection Act shall be construed to: . . . (3) Supersede or limit the applicability of any law or ordinance relating to sanitation, industrial health, or safety." Section 81-1516 stated:

> No person shall dispose of any refuse, garbage, or rubbish at any place except a disposal area licensed as provided by the Environmental Protection Act. *Nothing in the act nor any act of the director shall usurp the legal right of a local governing body to develop and enforce local ordinances, codes, or rules and regulations on solid waste disposal equal to or more stringent than the provisions of the act*, nor shall the provisions of the act relieve the applicant from obtaining a license from a local governing body when required or relieve the person owning or operating a disposal area from responsibility for securing proper zoning permits or complying with all applicable local ordinances, codes, or rules and regulations not in conflict with the provisions of the act.

(Emphasis supplied.)

The county maintains that § 81-1516 must be read in conjunction with § 81-1518(1), previously cited, which required that before the director approves a solid waste disposal area, "it

shall be approved by the county board of the county, if the area is outside the zoning jurisdiction of a city or village, or by the city council or board of trustees if within the zoning jurisdiction of a city or village. . . ."

As the governing body which must approve the solid waste disposal site, the county claims that its power precludes enactment and enforcement of the city's ordinance. In its brief, the county argues that "[t]he construction of the NEPA proffered by Springfield would . . . result in overlapping jurisdiction of different governmental entities and conflicting regulations over the same site." Brief for appellee at 24. To a limited extent, § 81-1518(3) did address the issue of overlapping jurisdiction:

> Upon receipt of the application, the director or his or her designated representative shall inspect the proposed site and if the proposed operation *complies with the provisions of the Environmental Protection Act* and the rules and regulations adopted under such act and the *ordinances of a city or village regulating the disposal of solid wastes* and *has been approved by the governmental subdivision where the area is to be located* and if the director finds that the applicant is a responsible and suitable person to conduct the business, the director shall issue a license to the applicant upon filing by the applicant with the director proof of financial responsibility pursuant to subdivision (21)(a) of section 81-1505.

(Emphasis supplied.)

However, the emphasized language must be read in conjunction with the rest of the section. Subsection (1) of § 81-1518 stated in part:

> Before the director shall approve a new solid waste disposal area, it shall be approved by the county board of the county, if the area is outside the zoning jurisdiction of a city or village, or by the city council or board of trustees if within the zoning jurisdiction of a city or village.

Subsection (2) of § 81-1518 states in part:

> Before the county board, city council, or board of trustees shall approve such area, notice shall be given at least ten days before the hearing. . . . If the county board, city

council, or board of trustees deems such an area suitable for a solid waste disposal area, such fact shall be certified to the director.

When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is the court's duty to discover, if possible, legislative intent from the statute itself. *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *State v. Seaman*, 237 Neb. 916, 468 N.W.2d 121 (1991).

Section 81-1518 very carefully required that the governing body of the governmental subdivision having zoning jurisdiction over the proposed solid waste disposal area approve such application and area, i.e., the county board, the village board, or the city council. Therefore, the only logical explanation for requiring in subsection (3) compliance with "ordinances of a city or village regulating the disposal of solid wastes" is that it applied only to such ordinances affecting waste disposal areas within the limit of authority of the city or village. The authority of the city was as limited by § 81-1518(1), to approve a solid waste disposal area "if within the zoning jurisdiction of a city or village."

As stated in *Agnew v. City of Culver City*, 51 Cal. 2d 474, 477, 334 P.2d 571, 573 (1959), when a city tried to invoke its ordinance requiring a license fee of an electrician holding a state license, the license fee

> limit[ed] the right of a contractor holding a state license to contract in Culver City unless he pays the city the prescribed fee and obtains a permit from the city; the requirement for the payment of a fee and the obtaining of a permit nullifies the permission given a contractor by the general law to conduct his business at any place in the state.

Whether it is called preemption or some other label is employed, it is apparent that the Legislature, by passage of NEPA, has limited the influence of the city countil of a city of the second class to the approval of a solid waste disposal area located within its zoning jurisdiction. The area which is the subject of this litigation is outside that jurisdiction of the City of Springfield, and its city council was without authority to impose a licensing requirement.

The city also relies upon Neb. Rev. Stat. §§ 17-535, 17-536, and 17-114 (Reissue 1991) to support its claim for authority to require licensing of a solid waste disposal facility in this instance.

Section 17-535 authorizes a city to construct and maintain a water supply and to "go beyond its territorial limits" to obtain property for this purpose.

Section 17-536 grants jurisdiction to a city "to prevent any pollution or injury to the stream or source of water for the supply of such waterworks, [which] shall extend fifteen miles beyond its corporate limits."

Finally, § 17-114 provides that the mayor of a city of the second class has jurisdiction, as may be vested in him by ordinance, over all places within 5 miles of the corporate limits, for the enforcement of health and quarantine ordinances.

"Statutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant." *Briar West, Inc. v. City of Lincoln*, 206 Neb. 172, 176, 291 N.W.2d 730, 732 (1980). In view of our discussion of the NEPA and its limitation over the powers of a city to approve an area for waste disposal purposes, we find no authority in the last-cited statutes which grants to the city any authorization to enact and enforce ordinances Nos. 306 and 311 as they apply to the present case.

The judgment of the district court is affirmed.

AFFIRMED.