IN RE ESTATE OF ROY MARSH, DECEASED.
J.R. KENNER, JR., PERSONAL REPRESENTATIVE OF THE ESTATE OF ROY MARSH, DECEASED, APPELLEE, V. BLUE VALLEY LUTHERAN HOMES SOCIETY, INC., APPELLANT, AND JAMES AND WILLA BUCKLES, APPELLEES.

513 N.W.2d 35

Filed March 8, 1994. No. A-92-772.

Robert I. Blevens, of Blevens & Jacobs; William C. Waller, Jr., of Vinton, Waller, Slivka & Panasci; and Steven R. Hutchins, of Gorsuch, Kirgis, Campbell, Walker & Grover, for appellant.

James P. McKernan, of McKernan & Werner, and Charles E. Wright, of Cline, Williams, Wright, Johnson & Oldfather, for appellee Kenner.

Rodney P. Cathcart for appellees Buckles.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

Blue Valley Lutheran Homes Society, Inc. (Blue Valley), appeals an order of the county court as affirmed by the district court. The county court found that Blue Valley had failed to timely object to the schedule of final distribution of assets from the estate of Roy Marsh and, therefore, (1) pursuant to the Nebraska Probate Code, had waived any objections to the distribution of rents and profits which it did not receive and (2) lacked standing to object to whether the fees for services provided by the personal representative and legal costs were appropriate. For the reasons recited below, we reverse, and remand with directions.

## FACTS

Roy Marsh died on November 6, 1980, a resident of Hebron, Thayer County, Nebraska. Marsh left three wills and various codicils. A will contest arose among the beneficiaries and wound its way to the Supreme Court. It was determined that the will of November 10, 1977, and two codicils thereto were invalid. *In re Estate of Marsh*, 216 Neb. 129, 342 N.W.2d 373 (1984). The remaining wills, dated January 7, 1970, and August 10, 1977, and various codicils were subsequently offered for probate. The parties recognized that another will contest would very likely follow and on October 27, 1987, entered into an agreement titled "Stipulation and Covenants to Compromise Controversies Involving Beneficiaries of the Estate of Roy Marsh" (Agreement). The Agreement provided that Peggy Sweetser, designated as a "devisee" in the wills, would retain certain funds from the proceeds of property held in joint tenancy with the decedent. The heirs would receive certain funds that were held in escrow following prior orders from the district court "pertaining to assets held in joint tenancy by the Decedent and Peggy Sweetser." Regarding Blue Valley, the Agreement provided:

> 3. All of the real estate of the Decedent, not otherwise sold or transferred subsequent to the death of the Decedent, which is situated in Thayer County, Nebraska, shall pass by inheritance and devise from the Decedent to

Blue Valley; and Kenner [the personal representative] shall make, execute, and deliver to Blue Valley deeds of distribution conveying said real estate to Blue Valley; and said conveyance shall be in full and complete satisfaction of the full distributive share of Blue Valley in the Estate of the Decedent, and of all claims or causes of action that Blue Valley may have or claim to have against the Estate and its Personal Representative, and any claim that Blue Valley may have or claim to have against any joint tenancy assets of the Decedent that are referred to in Case No. 12756 in the District Court of Thayer County; . . . and Blue Valley covenants that it shall make no further claim to any of the assets of the Decedent nor against the Estate of Kenner [sic], and it covenants that it will not, at any time in the future, offer any Will of the Decedent for probate in any court in the United States.

The residue of the estate would be distributed to appellees James and Willa Buckles, with the exception that any property the Buckleses held in joint tenancy with the decedent would continue to be held by the Buckleses. Furthermore, the Agreement provided:

8. It is intended by the parties hereto that all property transferred and received pursuant to this agreement *shall be taken by inheritance effective on the date of death of the Decedent*; and that this agreement shall be presented to the County Court of Thayer County and the District Court of Thayer County for approval thereof and shall become final and binding upon the parties hereto, and each of them, *at such time as it is approved by the County Court of Thayer County* . . . . Kenner and the Estate of the Decedent hereby release all of the remaining parties to this agreement of and from any and all claims or causes of action that Kenner or the Estate may have or claim to have against said parties, and all of the remaining parties to this agreement hereby release Kenner and the Estate of and from any and all claims and causes of action that they or any of them may have or claim to have against Kenner or the Estate.

(Emphasis supplied.)

The Agreement was approved by the county court on November 23, 1987. Blue Valley subsequently filed a motion requesting the court to order the personal representative, appellee J.R. Kenner, Jr., to distribute the deed for the real estate pursuant to the Agreement. On September 29, 1989, the county court ordered that the real estate be distributed pursuant to its November 23, 1987, order and the Agreement. An affidavit of compliance was filed by the personal representative on October 30, 1989, indicating that the deed to the real estate had been delivered.

On April 2, 1991, the personal representative mailed a filing to Blue Valley titled "Schedule Of Distribution" which listed the names of the distributees in one column, a description of the property distributed in a second column, and the date of distribution in a third column. On the same day, the personal representative also filed a "Petition for Complete Settlement After Formal Proceedings, Allowance and Approval of Fees and Expenses, and Approval of Final Distribution" with the county court. On May 6, 1991, Blue Valley filed a document titled "Objection to: Formal Petition for Complete Settlement (After Formal Proceedings); Approval of Final Distributions; and Allowance and Approval of Fees and Expenses" with the county court. In this filing, Blue Valley objected to the distribution on the grounds that the schedule failed to provide for the distribution of income from the real estate which Blue Valley had received pursuant to the Agreement. Blue Valley also filed a supplemental pleading objecting to the claims in the personal representative's petition regarding fees for services and legal fees. Both of these filings were made before the hearing. The personal representative and the Buckleses filed motions to strike in response to Blue Valley's objections, asserting that because Blue Valley had already received the deed to the real property, it had no standing or interest in the assets remaining on hand in the estate.

On May 10, 1991, a hearing was held in the county court. Blue Valley made a motion for a continuance, asserting that the petition for settlement and the schedule of distribution had not been sent to Blue Valley's Nebraska counsel. The motion was denied. Blue Valley then essentially asserted that pursuant to the

Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 to 30-2902 (Reissue 1989), it was entitled to the rents and profits from the land when it "inherited" the land on the date of Marsh's death pursuant to the Agreement and that the final distribution schedule failed to account for that income.

On May 13, 1991, the county court entered a formal order finding that Blue Valley had already received the deed to the real property pursuant to the Agreement and that therefore it no longer had any interest remaining in the estate and was not entitled to any further accounting from the personal representative or to object to legal fees or the fees of the personal representative at the closing of the estate. It further found that § 30-24,104(b) required Blue Valley to object to the final distribution schedule within 30 days of receipt and that its "failure to file objections thereto in the manner and time as required and provided by law" barred Blue Valley's right to object to the distribution at the formal closing of the estate.

Blue Valley appealed to the district court, which affirmed the judgment of the county court. Blue Valley subsequently perfected this appeal.

## SCOPE OF REVIEW

■ Probate cases will be reviewed for error appearing on the record. *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989).

## TIME LIMITATIONS TO OBJECT

Blue Valley asserts on appeal that the county court erred in applying the 30-day time limitation of § 30-24,104 to bar its right to file objections concerning the final distribution of property from the estate for several reasons, which may be distilled into the following three:

Firstly, Blue Valley claims that it did not receive adequate notice that this schedule of distribution was the proposal for distribution discussed in § 30-24,104(b) which would trigger the beginning of the limitations period.

Secondly, Blue Valley claims that it acquired the real estate, pursuant to the terms of the Agreement, as a devise or by inheritance. Therefore, Blue Valley asserts, as devisee, it is entitled under Nebraska case law to the income from that real

estate from the time of death of the decedent. Blue Valley asserts that the personal representative failed to account for and distribute this income in its schedule of distribution or in the formal petition for complete settlement. Blue Valley asserts that because the objections to the final distribution concern the failure of the personal representative to account for and distribute the income, its objections are not of the type barred by § 30-24,104.

Thirdly, Blue Valley claims that because it is still owed the as-yet-undetermined income, it is an interested party in the remainder of the estate and should be allowed to object to the claimed legal and personal representative fees.

In contrast, the appellees assert that the real estate Blue Valley received in 1989 was all the property it was meant to receive pursuant to the Agreement. Furthermore, they assert, even if Blue Valley had been entitled to the income from the real estate, its failure to timely object to the schedule of distribution filed in April 1991 would have barred even the consideration of any objection at the time of the hearing.

Determining if the limitations period for filing objections pursuant to § 30-24,104(b) bars Blue Valley from raising objections to the final distribution of assets at the formal closing of the estate necessarily requires this court to interpret the language of a statute.

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992); *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988). When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning, so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992). In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served and then place on the statute the reasonable construction which best achieves the purpose of the statute, rather than a

construction defeating the statutory purpose. *Sarpy County v. City of Springfield, supra.* "[I]n settling upon the meaning of a statute, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible." *Metropolitan Life Ins. Co. v. Kissinger Farms*, 244 Neb. 620, 627, 508 N.W.2d 568, 572-73 (1993).

Section 30-24,104(4)(b) is in article 24, part 9, of the Nebraska Probate Code. The code provides for the probate of wills with various levels of judicial involvement. Article 24, part 3, §§ 30-2414 through 30-2424, provides direction for the informal probate of a will. Formal probate directives are encompassed in article 24, part 4, §§ 30-2425 through 30-2438. Some estates will not be allowed to enter informal probate because the will was lost, § 30-2416 comment; a personal representative was appointed in another county, § 30-2416(6)(b); or, as in this case, more than one will was offered for probate, § 30-2417. The involvement of the court in formal probate is episodic, akin to crisis intervention. An interested person may file a petition to determine which will should be probated, see § 30-2434, or an interested party may file a petition challenging the personal representative's appointment and requesting the appointment of another personal representative or a special administrator, § 30-2425. The court moves in and out of the life of the estate administration as needed to resolve disputes. The most intense level of court involvement is described in article 24, part 5, "Supervised Administration," §§ 30-2439 through 30-2443. Pursuant to supervised administration, the court determines which will should be probated and which personal representative should be appointed. The personal representative is required to file regular reports to the court during the administration of the estate and is released by the court when he or she files a petition for distribution and closing. Supervised administration is considered to be one long proceeding, which ends with a closing order. See § 30-2443 comment. Under each of the above levels, the personal representative is required to

take an inventory, take possession of property, employ appraisers, and expeditiously settle and distribute the estate "without adjudication, order, or direction" of the court "except as otherwise specified or ordered in regard to" a supervised administration. § 30-2465.

In article 24, part 11, "Compromise of Controversies," §§ 30-24,123 and 30-24,124, the code allows competent parties having beneficial interests in an estate pursuant to a will clouded by a good faith contest or controversy to reach a settlement agreement, which will be approved by a court if the agreement is just and reasonable. § 30-24,124 comment. "Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement." § 30-24,124(3).

In article 24, part 9, §§ 30-2499 through 30-24,114, the code contains provisions for appropriately determining the distribution of estate assets under special circumstances. For example, § 30-24,100 provides the appropriate order for abatement of assets, and § 30-24,101 describes the right of retainer. Section 30-24,104, the section which the appellees assert bars Blue Valley's objections, provides appropriate methods to value the assets of an estate in preparation for a distribution in kind. It reads in pertinent part, "Unless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind to the extent possible through application of the following provisions . . . ."

In the case at bar, the assets in the decedent's wills are not being distributed in kind, they are being distributed "in accordance with the terms of [a compromise] agreement." § 30-24,124(3). The time limitations to object to an in-kind distribution of assets from an estate pursuant to the interpretation of a will are irrelevant to the case at bar because the distribution is pursuant to a contract. Section 30-24,104 cannot relieve the parties of their obligations under the Agreement. See, *Columbia Union Nat. Bank & Trust v. Bundschu*, 641 S.W.2d 864 (Mo. App. 1982) (holding that once the terms of a compromise agreement are approved, the property of the estate devolves according to the contract and

not the testamentary instrument, and the rights of the beneficiaries rest on the contract, not on the testamentary instrument); *Matter of Estate of Chasel*, 725 P.2d 1345 (Utah 1986) (holding that under the Utah probate code, a compromise agreement entered into by the decedent's son, who subsequently discovered a later will, was like any other compromise agreement in that it could not be set aside merely because one party discovered new evidence, but only for illegality, fraud, duress, undue influence, or mistake in the creation of the agreement). The county court erred in finding that Blue Valley's objections were time barred by § 30-24,104(b).

### BLUE VALLEY'S INTEREST IN THE ESTATE

The trial court also determined that Blue Valley did not have standing to object to the final distribution of the estate because the clear and unambiguous terms of the Agreement allowed Blue Valley to receive only the real estate, not the income from that property, and once Blue Valley received the real estate, there was nothing more it could receive from the estate. The trial court held that because the language in the Agreement was not ambiguous, there was no reason to go beyond the four corners of the Agreement to determine the intent of the parties. It refused to allow the admission of extrinsic evidence to indicate the intent of the parties and excused counsel from the courtroom once its decision was announced.

 The Supreme Court has long held that whether or not a contract is ambiguous is a question of law. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). A contract is ambiguous if a provision within the contract is susceptible of two or more reasonable but conflicting interpretations. *Id.*

 In the case at bar, pursuant to the Agreement, Blue Valley is to receive "the real estate of the Decedent, not otherwise sold or transferred subsequent to the death of the Decedent, which is situated in Thayer County, Nebraska." The Agreement does not provide a legal description of the "real estate." The Agreement goes on to state in paragraph 3 that the real estate "shall pass by *inheritance and devise* from the Decedent to Blue Valley," and in paragraph 8 that "[i]t is

intended by the parties hereto that *all property* transferred and received pursuant to this agreement shall be taken by inheritance *effective on the date of death of the Decedent*." (Emphasis supplied.) Blue Valley asserts that when it takes the real estate pursuant to the Agreement, it is taking the real estate by "inheritance and devise" and that because of this language in the Agreement, the laws of inheritance in effect at the time the Agreement was entered into are incorporated into the Agreement. But cf. *Columbia Union Nat. Bank & Trust v. Bundschu, supra.* Blue Valley cites *Hahn v. Verret*, 143 Neb. 820, 11 N.W.2d 551 (1943), for the proposition that title to real estate received pursuant to a devise in a will is vested in the devisee at the instant of the testator's death, and the income from the real estate descends as part of the real estate and is subject only to debts of the estate. The Agreement does not specifically state that Blue Valley is to receive the income from the real estate during the interim between Marsh's death and the actual transfer of the deed; however, it does state that Blue Valley shall take the property by "inheritance *effective on the date of death of the Decedent*." (Emphasis supplied.) We also note that the Agreement does not require the personal representative to reserve the income from the real estate in the conveyance to Blue Valley. See *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992).

In contrast, the appellees assert that the above phrases were included in the agreement only to provide the personal representative with sufficient support for his claim before the Internal Revenue Service that the real property was being devised at the date of death and that therefore the estate should receive the date-of-death value as its charitable deduction.

 We recognize that merely because the parties to a contract suggest opposing interpretations of a provision in the contract is not sufficient grounds to find that the contract is ambiguous. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). Such is the case before us now. The Agreement states that "all property transferred and received pursuant to this agreement shall be taken by inheritance *effective on the date of death of the Decedent*." (Emphasis supplied.) In the deed transferring the property, the personal

representative conveyed, assigned, transferred, and released the described real estate to Blue Valley subject only to covenants and easements of record. In Nebraska, the general long-standing rule is that "[a]n otherwise effective conveyance of property transfers the entire interest which the conveyor has and has the power to convey, unless an intent to transfer a less interest is effectively manifested." Neb. Rev. Stat. § 76-104 (Reissue 1990). Accord *State v. Union Pacific RR. Co., supra.* Because of the Agreement's language, Blue Valley received the entire interest of the personal representative in the designated real estate, including any future income, on the date of Marsh's death. See *National Bank of Commerce v. Lefferdink,* 110 Neb. 275, 193 N.W. 916 (1923) (holding that rents in the form of growing crops passed to the purchaser of the land when the grantor parted with title). The Agreement was not ambiguous. As devisee of this property, including the future income therefrom, Blue Valley had a continuing interest in the estate. It was error for the trial court to find that Blue Valley had no interest remaining in the estate related to the property after the delivery of the deed. Because we have determined that the trial court concluded erroneously that Blue Valley had no interest in the income from the real estate, the cause is remanded for further proceedings, and both parties are entitled to be placed in the same position they were in before the error occurred. See *Peterson v. Massey,* 155 Neb. 829, 53 N.W.2d 912 (1952).

REVERSED AND REMANDED WITH DIRECTIONS.

HANNON, Judge, dissenting.

Except for the interpretation of the stipulation, I agree with the majority's conclusions on the points which are discussed. I dissent upon the basis of two points.

The "Stipulation and Covenants to Compromise Controversies Involving Beneficiaries of the Estate of Roy Marsh" of October 27, 1987, is quoted significantly in the first part of the majority opinion. In that agreement, it is stated that the conveyance to Blue Valley

> shall be in full and complete satisfaction of the full distributive share of Blue Valley in the Estate of the Decedent, and of all claims or causes of action that Blue Valley may have or claim to have against the Estate and its

Personal Representative . . . and Blue Valley covenants that it shall make no further claim to any of the assets of the Decedent nor against the Estate . . . .

In my opinion, the release is very broad and all-inclusive. If Blue Valley had any claim against the estate for rents at the time of that agreement, I think it released that claim as a result of the settlement.

The estate received rents after the settlement, and of course the release would not settle that claim. When the estate took or kept rents and profits from real estate it was not entitled to take, it converted those rents and profits.

Neb. Rev. Stat. § 30-2485(b) (Reissue 1989) provides as follows:

All claims, other than for administration expenses, against a decedent's estate which arise at or after the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) a claim based on a contract with the personal representative, within four months after performance by the personal representative is due;

(2) any other claim, within four months after it arises.

The statute, like Blue Valley's covenant, is very broad. The evidence shows that the real estate was distributed to Blue Valley on October 30, 1989. At least by the date the real estate was distributed, if not before, Blue Valley's claim against the estate for the wrongful taking of the rents arose. It was not presented within 4 months from the date it arose, and it was therefore barred under § 30-2485(b).

For these reasons, I am of the opinion that the judgment of the district court should be affirmed.