RUTH BROWN AND JOE BROWN, AS PARENTS AND NATURAL
GUARDIANS OF SUNSHINE BROWN, A MINOR, APPELLANTS, V.
KEVIN WILSON AND VICKIE WILSON, APPELLEES.

567 N.W.2d 124

Filed July 3, 1997.    No. S-95-1020.

Kay A. Nehring, of Reed, King & Nehring Law Office, for appellants.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

The district court for Box Butte County granted summary judgment in favor of Kevin Wilson and Vickie Wilson, defendants in a negligence action, finding that the Nebraska Recreation Liability Act (Act), Neb. Rev. Stat. § 37-1001 et seq. (Reissue 1993), insulated the Wilsons from liability and barred the claim of the plaintiffs, Ruth Brown and Joe Brown. The Browns appealed the decision of the district court directly to this court, having filed a petition to bypass which we granted. We reverse, and remand.

## FACTUAL BACKGROUND

On or about November 27, 1991, 10-year-old Randi Wilson, the daughter of the Wilsons, invited her friend, 9-year-old Sunshine Brown, to her home to play. With the permission of Ruth Brown, Sunshine's mother, Kevin Wilson collected Randi, Sunshine, and Sunshine's brother, Skye, from school that day and took them to the Wilsons' home.

The Wilsons' home was situated on about 5 acres of land which included a shop, a small barn, a chickenhouse, a small building, corrals, and a small wire-fenced enclosure. The Wilsons owned Cactus, a quarter-horse-cross mare; Daisy, a miniature pony; Misty, a Shetland pony; and Mah Jong, a quarter-horse gelding retired from the racetrack.

Randi decided to lunge Mah Jong. Lunging is a method of training a horse where a lunge line is attached to the horse's halter and a person holds on to the other end of the line and has the horse move in circles around the person. Although Randi was allowed to work with Mah Jong, Randi's friends were not. Randi put a halter on Mah Jong, led him into a corral next to the one where Sunshine and Skye were, attached a lunge line to his halter, and proceeded to have him circle around her. Mah Jong repeatedly attempted to approach Cactus in the other corral. Randi asked Sunshine to help her, so Sunshine climbed the fence into the corral with Randi and helped Randi hold on to Mah Jong's lunge line as he circled them. After Mah Jong was circling correctly, Randi told Sunshine to go outside the circle and wait by the fence and that Randi would call if she needed further help. Mah Jong behaved for awhile, and then he started

to go faster than Randi could control, so Randi again called Sunshine to help her. When Sunshine approached Randi to help her, she was kicked in the face by Mah Jong, sustaining injuries to her face, mouth, and teeth.

The Browns filed this action on Sunshine's behalf as her parents and natural guardians. The Wilsons filed a motion for summary judgment, which the district court granted, holding the Browns' claim was barred because the Act applied to this case and insulated the Wilsons from liability.

## ASSIGNMENTS OF ERROR

The Browns claim the district court erred by sustaining the Wilsons' motion for summary judgment and finding the Act applied to this case; by finding that the Wilsons' home fell within the meaning of "land" in the Act, that Sunshine was a member of the "public," and that Sunshine's purpose for entering the land was recreational; and in determining that there were no genuine issues of material fact regarding whether or not the exception to liability found at § 37-1005(1) applied in this case.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

*Bowling Assocs. Ltd. v. Kerrey, ante* p. 458, 461, 562 N.W.2d 714, 716 (1997). Accord, *Kime v. Hobbs, ante* p. 407, 562 N.W.2d 705 (1997); *Northern Bank v. Pefferoni Pizza Co., ante* p. 321, 562 N.W.2d 374 (1997).

"In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence." *Bowling Assocs. Ltd. v. Kerrey, ante* at 461, 562 N.W.2d at 716-17. Accord, *Kime v. Hobbs, supra*; *Vilcinskas v. Johnson, ante* p. 292, 562 N.W.2d 57 (1997).

"Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an inde-

pendent, correct conclusion irrespective of the determination made by the court below." *Moore v. Eggers Consulting Co., ante* p. 396, 400, 562 N.W.2d 534, 538-39 (1997). Accord, *Loup City Pub. Sch. v. Nebraska Dept. of Rev., ante* p. 387, 562 N.W.2d 551 (1997); *Metropolitan Utilities Dist. v. Balka, ante* p. 172, 560 N.W.2d 795 (1997); *In re Estate of Muchemore, ante* p. 119, 560 N.W.2d 477 (1997); *Robertson v. School Dist. No. 17, ante* p. 103, 560 N.W.2d 469 (1997).

## ANALYSIS

The Act insulates landowners from negligence liability when they allow members of the public to enter and use their land for recreational purposes. See, §§ 37-1001 to 37-1008; *Holden v. Schwer*, 242 Neb. 389, 495 N.W.2d 269 (1993); *Thies v. City of Omaha*, 225 Neb. 817, 408 N.W.2d 306 (1987); *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984). The Act defines recreational purposes and provides that

the term recreational purposes shall include, but not be limited to, any one or any combination of the following: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water-skiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, scenic, or scientific sites, or otherwise using land for purposes of the user[.]

§ 37-1008(3).

The purpose of the Act is "to encourage owners of land to make available to the public land and water areas for recreational purposes by limiting their liability toward persons entering thereon . . . ." § 37-1001. Under the Act, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." § 37-1002. Specifically, the Act states:

[A]n owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby (1) extend any assurance that the premises are safe for any purpose, (2) confer upon such persons the legal status of an invitee or

licensee to whom a duty of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons. § 37-1003. A landowner protected by the Act is liable only for "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity," or when the owner charges the person for entry on the land. § 37-1005.

The Browns argue that Randi's invitation to Sunshine to go home with Randi and play did not constitute an invitation to the "public" under § 37-1001 and that the Legislature did not intend the Act to apply to residential settings. The Act does not define the term "public"; therefore, the determination of this issue is a matter of statutory interpretation.

When interpreting a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Loup City Pub. Sch. v. Nebraska Dept. of Rev., supra; Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997). The court's duty is to discover, if possible, legislative intent from the statute itself. *Arizona Motor Speedway v. Hoppe*, 244 Neb. 316, 506 N.W.2d 699 (1993); *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992); *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). When construing a statute, a court looks to the objects sought to be accomplished, the evils and mischief sought to be remedied, or the purposes to be served, and places upon the statute a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. *Arizona Motor Speedway v. Hoppe, supra; In re Interest of McManaman*, 222 Neb. 263, 383 N.W.2d 45 (1986). See *Sarpy County v. City of Springfield, supra.* Because the Act is in derogation of common law, the statutes are strictly construed. See, *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989); *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985).

The term "public" connotes "an unexclusive group of persons." 73 C.J.S. *Public* at 330 (1983). The word "public" has also been defined as "[t]he whole body politic, or the aggregate of the citizens of a state, nation, or municipality[;] . . . does not

mean all the people, nor most of the people, . . . but so many of them as contradistinguishes them from a few[;] . . . the people of the neighborhood[;] . . . the inhabitants of a community." Black's Law Dictionary 1227 (6th ed. 1990). The record in this case is devoid of evidence that the Wilsons opened their land to the public. See, e.g., *Holden v. Schwer*, 242 Neb. 389, 495 N.W.2d 269 (1993) (defendant often gave others permission to use his land without charge for hunting, fishing, and other purposes); *Gallagher v. Omaha Public Power Dist.*, 225 Neb. 354, 405 N.W.2d 571 (1987) (defendant gave permission to neighborhood association to use empty lots for recreational purposes, primarily baseball and softball).

We determine that Sunshine is not a member of the "public" as contemplated by the Act. When interpreting the word "public" in the Act, we must determine and give effect to the purpose and intent of the Legislature in enacting the Act; therefore, we are guided by the stated purpose of the Act, which is "to encourage owners of land to make available to the public land and water areas for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon." § 37-1001.

Several courts, including this court, have limited the scope of the Act's immunity when considering the purpose of the Act. See, e.g., *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989) (holding Act did not apply to independent indoor recreational facilities, including indoor swimming pools); *LePoidevin v. Wilson*, 111 Wis. 2d 116, 330 N.W.2d 555 (1983) (finding recreational use act did not apply where defendant did not open his land to public; rather, defendant opened his land to social guest who was invited onto land); *Wymer v. Holmes*, 429 Mich. 66, 412 N.W.2d 213 (1987) (holding recreational use act applied only to large tracts of undeveloped land suitable for outdoor recreational uses); *Herring v. Hauck*, 118 Ga. App. 623, 165 S.E.2d 198 (1968) (holding recreational use act inapplicable to 13-year-old boy injured in neighbor's swimming pool); *Snyder v. Olmstead*, 261 Ill. App. 3d 986, 634 N.E.2d 756 (1994), *appeal denied* 157 Ill. 2d 523, 642 N.E.2d 1304 (finding recreational use act did not apply where owner did

not open his land to public but simply invited private persons to picnic); *Boileau v. De Cecco*, 125 N.J. Super. 263, 310 A.2d 497 (1973), *aff'd* 65 N.J. 234, 323 A.2d 449 (1974) (holding recreational use act did not apply to homeowners in suburbia).

We conclude that the Legislature, when enacting the Act, did not intend that a child invited to her friend's home constitutes a member of the "public" in order that the landowner be considered as having opened his or her land to the "public" for purposes of coming under the Act's protection. Sunshine was a friend invited by the landowners' daughter to their home. The Act's purpose, to encourage a landowner to open his land to the public for recreation, is not advanced by applying the Act to this situation; rather, such application would distort the Act's purpose by extending its immunity beyond the scope intended by the Legislature. Accordingly, we hold that the Act does not apply to a residential setting not open to the public for recreational purposes, where the landowners' daughter invites a private friend home to play. To hold otherwise would eviscerate the common law by immunizing all homeowners from negligence claims of their guests who engaged in recreational activities and would lead to absurd results.

## CONCLUSION

Because we hold that the Nebraska Recreation Liability Act does not apply to this case, we find it unnecessary to address the Browns' other assignments of error. We reverse the district court's grant of summary judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.